# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | | |
|---|---|---|
| **DIRECTORY CONCEPTS, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | CAUSE NO. 1:08-CV-225 |
| | ) | |
| **DIONNE FOX, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINION AND ORDER

Before the Court in this lawsuit involving competitive issues and trade secrets is a Motion for Protective Order filed by Plaintiff Directory Concepts, Inc. ("DCI"), on December 4, 2008. (Docket # 37.) DCI explains in its motion that it anticipates asking, or being asked, in the discovery process questions that will disclose DCI's trade secrets or other proprietary, confidential information, and therefore, it requests that the Court enter its proposed protective order.

Defendants filed a response on December 8, 2008, adamantly opposing DCI's request for a protective order. (Docket # 41.) Oral argument was heard on the motion on December 9, 2008 (Docket # 44), and DCI filed its reply brief three days later (Docket # 46). The matter is now fully briefed.

For the reasons stated herein, DCI's motion will be GRANTED, though the protective order entered contemporaneously herewith is not as broad as that proposed by DCI.

### A. *Procedural Background and the Parties' Positions*

On August 12, 2008, DCI, a certified marketing representative that administers national

yellow page advertising for its customers, commenced this suit against two of its former employees, individual Defendants Dionne Fox and Dan Abbott, and their current employer and DCI's competitor, Defendant Directory Solutions Ltd. (Docket # 1.) DCI alleges that Defendants misappropriated or conspired to misappropriate certain trade secrets and other proprietary, confidential information belonging to DCI. (Docket # 1.) On that same day, DCI filed a motion for a preliminary injunction. (Docket # 2.)

A scheduling conference was conducted on November 18, 2008. (Docket # 35.) At the conference, DCI reported that it desired to enter into a stipulated protective order with Defendants but that Defendants had rejected its proposal. (Docket # 35.)

Consequently, on December 4, 2008, DCI filed the instant motion seeking the entry of its own proposed protective order. (Docket # 37.) In the motion, DCI explains that it intends to ask Defendants during discovery certain questions that will require the discussion of DCI's customers, vendors, employees, and business operations – information that it contends constitutes trade secrets or proprietary, confidential information. (Pl.'s Br. in Supp. of Its Mot. for Protective Order 2-3.) In addition, DCI contends that Defendants' discovery requests require that DCI disclose information about the trade secrets that DCI alleges Defendants have misappropriated, as well as other confidential information. (Pl.'s Br. in Supp. 3, Ex. B.) In short, DCI does not want to disclose its confidential information to competitors during the discovery process without the assurance that the information will remain confidential.

Defendants oppose DCI's motion. They argue that DCI makes "only vague allegations and conclusory statements regarding potential harm" and that the items DCI seeks to protect as trade secrets and confidential information are readily ascertainable. (Defs.' Br. in Opp'n to Pl.'s

Mot. for Protective Order ("Resp. Br.") 1.)  As Defendants see it, DCI has not established good cause for the entry of a protective order. (Resp. Br. 1.)

## B. Applicable Law Regarding Protective Orders

1. <u>Federal Rule of Civil Procedure 26(c)</u>

The Seventh Circuit Court of Appeals has stated that "[d]istrict courts have broad discretion in matters relating to discovery." *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002).  Under Federal Rule of Civil Procedure 26(c), a court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way . . . ."  "The rule facilitates disclosure." *Star Scientific, Inc. v. Carter*, 204 F.R.D. 410, 413-14 (S.D. Ind. 2001).  "If [parties] suspect that their trade secrets may fall into the wrong hands, parties may be uncooperative with respect to discovery requests.  Assuring the safety of these sensitive disclosures often has the effect of encouraging the apprehensive litigants to fully cooperate with the discovery process." *Id.* (quoting *Andrew Corp. v. Rossi*, 180 F.R.D. 338, 340 (N.D. Ill. 1998)).

"The movant bears the burden of showing good cause, and such burden must be satisfied with 'a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements, in order to establish good cause.'" *Patt v. Family Health Sys., Inc.*, 189 F.R.D. 518, 522 (E.D. Wis. 1999) (quoting Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 2035 (2nd ed. 1994)); *see also Ezell v. Potter*, No. 2:01 CV 637, 2006 WL 1094558, at *1 (N.D. Ind. Mar. 16, 2006); *see generally Citizens First Nat'l Bank of*

*Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 945 (7th Cir. 1999) ("[T]he public at large pays for the courts and therefore has an interest in what goes on at all stages of a judicial proceeding."). "[M]erely asserting that a disclosure of the information 'could' harm a litigant's competitive position is insufficient; the motion must explain how." *Shepard v. Humke*, IP 01-1103-C-H/K, 2003 WL 1702256, at *1 (S.D. Ind. Mar. 28, 2003) (citing *Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 547 (7th Cir. 2002)).

Furthermore, a protective order must extend only to "properly demarcated categor[ies] of legitimately confidential information." *Cincinnati Ins.*, 178 F.3d at 945-56 (noting that a broad protective order granting carte blanche discretion to a party is invalid); *see also MRS Invs. v. Meridian Sports, Inc.*, No. IP 99-1954-C-F/M, 2002 WL 193140, at *1 (S.D. Ind. Feb. 6, 2002) (rejecting proposed protective order because categories of protected information were overly broad and vague); *Cook Inc. v. Boston Scientific Corp.*, 206 F.R.D. 244, 248-49 (S.D. Ind. 2001); *Andrew Corp.*, 180 F.R.D. at 342. On that score, the Seventh Circuit Court of Appeals has had "no objection to an order that allows the parties to keep their trade secrets (or some other properly demarcated category of legitimately confidential information) out of the public record, provided the judge (1) satisfies himself that the parties know what a trade secret is and are acting in good faith in deciding which parts of the record are trade secrets and (2) makes explicit that either party and any interested member of the public can challenge the secreting of particular documents." *Cincinnati Ins.*, 178 F.3d at 946.

2. Indiana Uniform Trade Secrets Act

The Indiana Uniform Trade Secrets Act, Ind. Code §§ 24-2-3-1 *et seq.* (the "IUTSA"), also provides the authority for a court to enter a protective order. *See Vibromatic Co. v. Expert*

4

*Automation Sys. Corp.*, 540 N.E.2d 659, 661 (Ind. Ct. App. 1989) ("An attempt to protect a trade secret would be futile if meritorious litigation would result in the disclosure of the trade secret."). The IUTSA states: "In an action under this chapter, a court shall preserve the secrecy of an alleged trade secret by reasonable means, which may include granting protective orders in connection with discovery proceedings, holding in-camera hearings, sealing the records of the action, and ordering any person involved in the litigation not to disclose an alleged trade secret without prior court approval." Ind. Code § 24-2-3-6. A "trade secret" is defined under the IUTSA as:

> [I]nformation, including a formula, pattern, compilation, program, device, method, technique, or process, that:
>
> (1) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
>
> (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Ind. Code § 24-2-3-2.

### *C. Analysis*

Here, DCI seeks to protect four categories of information:

(a) "Non-Party Private Information" defined as home addresses, telephone numbers, internet addresses, social security numbers, and tax or banking information of non-parties, as well as information regarding the non-parties' advertising budgets and expenditures, which could be viewed by the customers' competitors in the marketplace.

(b) "Trade Secrets" as defined in Indiana Code § 24-2-3-2 and Indiana case law;

(c) "Highly Confidential Business Information" defined as identities, street addresses, telephone numbers, and internet addresses of customers; customer preferences and purchasing habits; point or contact persons through which sales have been made; data quantifying sales, discounts, sales order timing, costs and/or

5

>> pricing; order, order close and publication dates for customer advertising, and the value of orders by the parties' customers; and
>
> (d) "Proprietary Personnel Information" defined as the identity, position, territory, work history, qualifications, evaluations, and salary and benefits of current employees of the parties.

(Proposed Mot. for Protective Order ¶¶ 8, 10.) The proposed order allows DCI to designate Non-Party Private Information as "CONFIDENTIAL" and the remaining three categories as "ATTORNEYS' EYES ONLY." (Proposed Mot. for Protective Order ¶¶ 5, 8, 10.)

1. <u>Other than Trade Secrets, DCI's proposed categories of confidential information are properly demarcated</u>.

Defendants first argue that DCI does not identify with sufficient specificity the information that it seeks to protect. (Resp. Br. 4-5.) Defendants' argument is unconvincing with respect to the categories of Non-Party Private Information, Highly Confidential Business Information, and Proprietary Personnel Information, as these three categories are indeed "properly demarcated." *Cincinnati Ins.*, 178 F.3d at 945-56. However, the proposed order's rather generic definition of Trade Secrets does not, standing alone, satisfy the Court that the parties know what a Trade Secret is and that they will designate them in good faith. *See id*.

2. <u>The category of Trade Secrets will be modified so that it is properly demarcated</u>.

In an affidavit submitted in support of its motion for protective order, DCI further explains that it "safeguards its customer information and data – its greatest assets", stating that it stores this information in "specialized electronic programs." (Ault Aff. ¶¶ 9, 10.) Of course, by definition, information cannot constitute trade secrets unless it is the subject of efforts to maintain its secrecy. *See* Ind. Code § 24-2-3-2. DCI then described this safe-guarded customer information with greater particularity:

(a) "Workflow Information" defined as the directory in which the customer has advertising, the date each order was created or last changed, the publication "close date" (the last date to submit changes to the directory) for each directory; the "issue date" (when each directory will be published and distributed to the public); and the "order value" (the total value of the advertising in a specific directory);

(b) "Order Information by Client" defined as the specific details of a client's advertising by heading and the purpose of the order (what is transmitted to the publisher to place the advertising for the client), including transaction codes showing the phases or stages of the orders, client information, ad information (ad size, artwork, and pricing for each item), pricing information (including publisher discounts); and total order value;

(c) "Billing Preferences by Regions" (listing of billing terms at a customer's region level) defined as the data showing billing preferences and details of who (at a client) will receive the invoice and how invoicing will occur (*e.g.*, one installment at close, five installments at publication with particular discounts); whether the clients wants charges itemized by location; and applicable fees and billing terms;

(d) "Databases That Show Billing Preferences by Location and by Region" (listing billing terms at the location or region level) defined as the data showing who will receive the invoices and how customers will be invoiced and when, including a list of locations for a client; client and CMR number; billing description by location with number of installments; discounts, if applicable; itemization (if the client wants the charges itemized by location); applicable fees; and location billing terms (*e.g.*, net 30);

(e) "Client Databases Detail by Location" defined as the client contact information data for each customer location (*e.g.*, the person who approves advertising) and billing information (*e.g.*, the location billing address for invoices);

(f) "Contact Databases" defined as the contact databases that manage information associated with clients, prospects, and vendors, which includes information such as CMR and client number; company name; contact's name, title, department, telephone and facsimile numbers, postal and e-mail address, and web site; notes; history; and secondary contact information; and

(g) "Nat Reports by Region or Location" defined as reports that are broken down on a regional or location level and are used to acquire the client's authorization to place the specified advertising, providing a complete list of a client's advertising in the specified directories with information regarding publishers, close date, issue date, heading for each advertisement, advertised name, client's name as it will appear in print, client's address as it will appear in print, client's telephone

> number as it will appear in print, UDAC (specific ad size client has requested to appear), artwork, pricing for each item, item description (description of the specific ad), publisher discounts, and location information (if multiple locations are represented in one order).

(Ault Aff. ¶ 11.)

As contemplated at the December 9 hearing, because the proposed order's definition of Trade Secrets lacks specificity, this description of safe-guarded customer information from DCI's affidavit will instead be incorporated into the protective order to identify the alleged Trade Secrets with greater particularity. As modified, this definition is sufficiently specific to satisfy the Court that the parties know what a Trade Secret is and that they will designate them in good faith. *See Cincinnati Ins.*, 178 F.3d at 946.

3. <u>Defendants' attempt to argue the merits of the case is insufficient to defeat the motion for protective order</u>.

Defendants also argue that the information that DCI seeks to protect does not constitute a trade secret because, despite DCI's contentions, the information is "readily ascertainable by proper means by, other persons who can obtain economic value from its use." Ind. Code § 24-2-3-6. However, in advancing this argument, Defendants leap to the merits of this action – that is, whether the information DCI claims to be trade secrets actually constitutes trade secrets. In fact, the two cases the Defendants rely on in advancing this argument address motions for a preliminary injunction *not* a motion for a protective order. *See Primecare Home Health v. Angels of Mercy Home Health Care, L.L.C.*, 824 N.E.2d 376 (Ind. Ct. App. 2005) (affirming denial of plaintiff's motion for a preliminary injunction where defendants, who were former employees of plaintiff, raided defendant's clients after gaining through proper means the same customer information plaintiff claimed was a trade secret); *Standard Register Co. v. Cleaver*, 30 F. Supp.

2d 1084 (N.D. Ind. 1998) (concluding in the context of a motion for a preliminary injunction that plaintiff's customer list was not a trade secret where the content was readily ascertainable and plaintiff failed to take any reasonable efforts to maintain its secrecy).

It is important to remember that Federal Rule of Civil Procedure 26(c) does not limit a court to entering a protective order solely for trade secrets. Rather, a court may also enter a protective order to protect "other confidential research, development, or commercial information." Fed. R. Civ. P. 26(c)(1)(G). Furthermore, in addition to Rule 26(c), the IUTSA expressly mandates that a court "shall preserve the secrecy of an *alleged* trade secret . . . ." Ind. Code § 24-2-3-6 (emphasis added). As explained *supra*, "[a]n attempt to protect a trade secret would be futile if meritorious litigation would result in the disclosure of the trade secret." *Vibromatic Co.*, 540 N.E.2d at 661.

In *Textured Yarn Co. v. Burkart-Schier Chemical Co.*, 41 F.R.D. 158 (E.D. Tenn. 1966), a similar, albeit dated, case, the plaintiff also filed a motion for a protective order in an action alleging that defendants wrongfully appropriated plaintiff's trade secrets. The defendant resisted plaintiff's motion on several grounds, including that the plaintiff's claims concerning its trade secrets were without merit and that the protective order should be limited solely to the claimed trade secrets. The court stated:

> [T]his is one of the ultimate issues in the lawsuit and . . . it would be improper for the Court to deny a protective order on the basis of the lack of merit of the plaintiff's contentions with regard to trade secrets. . . . The existence of any trade secrets owned by the plaintiff is disputed. A protective order limited to trade secrets, to be effective would require adjudication of the trade secret issue, in the absence of stipulation by the parties with regard to the definition of the trade secrets alleged to be involved.

*Id*. at 160. Ultimately, the court found the defendant's arguments unpersuasive and granted the

plaintiff's request for the protective order.

Similarly, in *American Heavy Moving & Rigging Co. v. Robb Technologies, L.L.C.*, No. 2:04-CV-00933-JCM (GWF), 2006 WL 2085407, at *3-5 (D. Nev. July 25, 2006), another dispute alleging the misappropriation of trade secrets by a competitor, the Court denied plaintiff's request to modify a previously-entered protective order, which limited the disclosure of the defendant's trade secrets and other proprietary confidential information to solely plaintiff's counsel and its expert witness. The court explained: "The issues involving Defendants' alleged trade secrets are ultimate issues, or are intimately related to the ultimate issues, to be decided in this case. . . . [E]ntering an order that would require a separate adjudication to decide trade secret issues for discovery purposes would cause undue burden and expense and . . . potentially result in inconsistent decisions." *Id.* at 5.

As articulated *supra*, Federal Rule of Civil Procedure 26(c) is designed to "facilitate[] disclosure."[1] *Star Scientific,* 204 F.R.D. at 413-14. Providing DCI with some assurance that its trade secrets or other proprietary, confidential information will not fall into a competitor's hands will certainly encourage it to more fully cooperate with the discovery process in this action. *See id.* Furthermore, to mitigate Defendants' concern that certain of DCI's alleged trade secrets or other proprietary, confidential information is "readily ascertainable," the Court will incorporate the following provision into the protective order:

---

[1] Defendants also argue that if DCI does not want to divulge certain information when it deposes the individual Defendants, "it can simply not ask about it or tailor its questions appropriately." (Resp. Br. 5.) However, this argument is short-sighted, as it is exactly this type of situation where the entry of a protective order is prudent – that is, so the discovery process is not inhibited.

Defendants further reason that DCI will not be harmed by inquiring about the trade secrets that the individual Defendants allegedly misappropriated since DCI obviously believes that Defendants already possess this information. (Resp. Br. 5.) This argument is ineffective, as obviously one of the purposes of discovery is to flush out the particular facts concerning the alleged claims.

> The restrictions embodied in this protective order shall be binding on the party to whom such CONFIDENTIAL or ATTORNEYS' EYES ONLY material is disclosed unless and until there is a showing that: (i) information which is so designated as confidential was or has become public knowledge absent a breach of the restrictions embodied herein, or (ii) such information was already known to the party to whom such disclosure was made by a third party who himself has not breached any confidential relationship which may have existed or exists between such third party and the party making the disclosure.

This type of provision is fairly standard fare in protective orders and is appropriate given the instant dispute. *See, e.g.*, *Hoffman v. Szyszko*, No. 94 C 2357, 1996 WL 392223, at *6 (N.D. Ill. July 10, 1996).

    4. <u>Good cause exists for the entry of a protective order</u>.

As explained *supra*, a party seeking a protective order must establish good cause for the order – that is, that the disclosure of its confidential information will cause a clearly defined and serious injury. *See Patt*, 189 F.R.D. at 522. Defendants also contend that DCI's order should be denied because it makes only conclusory and vague allegations of harm.

DCI's allegations of harm in the event of disclosure are sufficiently specific. DCI explains that disclosure of Non-Party Private Information would risk unnecessary annoyance or embarrassment of non-parties, would unfairly and gratuitously invade the privacy of non-parties, would subject non-parties to the possibility of identity theft, and would strain the business relationships the parties have with the non-parties. DCI further reports that disclosure of Highly Confidential Business Information would enable a competitor to target the producing party's customers and potential customers, undercut the producing party's pricing, and mimic the producing party's successful business plan. And, DCI represents that the disclosure of Proprietary Personnel Information would enable a competitor to evaluate the producing party's workforce, determine the identify of the best employees of the producing party in the specific

11

geographical areas, obtain contact information for those employees, and lure employees away from the producing party by offering a slightly higher salary or slightly better benefits.

As to the disclosure of Trade Secrets, DCI correctly summarizes that harm is inherent in the disclosure of a trade secret. A trade secret derives its economic value from not being generally known to those who can obtain economic value from its disclosure or use. *See* Ind. Code § 24-2-3-2.

In short, DCI demonstrates good cause for the protective order it seeks.

5. <u>Trade Secrets and Highly Confidential Business Information will be limited to ATTORNEYS' EYES ONLY</u>.

Defendants also argued at the hearing that DCI's restriction of Trade Secrets, Highly Confidential Business Information, and Proprietary Personnel Information to ATTORNEYS' EYES ONLY, rather than simply CONFIDENTIAL, in the proposed order is overbroad.

Defendants' assertions are unpersuasive. The Court understands DCI's desire to limit its Trade Secrets and Highly Confidential Business Information, that is, its information pertaining to customers, to only its attorneys and experts. As DCI represents, its customer information is its "greatest assets." (Ault Aff. ¶ 9.) Indeed, it is not uncommon for courts to limit trade secrets to attorneys' eyes only in protective orders. *See, e.g.*, *Cook*, 206 F.R.D. at 249 (limiting the viewing of trade secrets to attorneys eyes only in a protective order); *Autotech Technologies Ltd. P'ship v. Automationdirect.com, Inc.*, 235 F.R.D. 435, 445-46 (N.D. Ill. 2006) (collecting cases). Furthermore, the desire to shield its Proprietary Personnel Information, much of which would seemingly be irrelevant to the dispute here, from the eyes of competitors is also reasonable. *See, e.g.*, *Smith v. City of Chicago*, No. 04 C 2710, 2005 WL 3215572, at *2 (N.D. Ill. Oct. 31, 2005)

(citing *Knoll v. Am. Tel. & Tel. Co.*, 176 F.3d 359, 365 (6th Cir. 1999)); *Davis v. Precoat Metals, a Div. of Sequa Corp.*, No. 01 C 5689, 2002 WL 1759828, at *4 (N.D. Ill. July 29, 2002) (limiting personnel information to attorneys' eyes only).

Therefore, the categories of Trade Secrets, Highly Confidential Business Information, and Proprietary Personnel Information will be limited as DCI has proposed, that is, to ATTORNEYS' EYES ONLY.[2]

### *D. Conclusion*

For the reasons set forth herein, Plaintiff's Motion for a Protective Order (Docket # 37) is GRANTED in that a protective order is being entered contemporaneously herewith, though it is not as broad as the form of order proposed by Plaintiff.

SO ORDERED.

Enter for this 16th day of December, 2008.

/S/ Roger B. Cosbey
Roger B. Cosbey,
United States Magistrate Judge

---

[2] The language of paragraphs 6, 8, 10, 14, and 15 in DCI's proposed protective order has also been slightly modified in order to minimize use of the term "includes" or "contain[s]" and undefined terms and to more explicitly incorporate the redaction of confidential information, rather than entire documents being filed under seal. *See Cincinnati Ins.*, 178 F.3d at 945 (stating that an order sealing documents containing confidential information is overly broad because a document containing confidential information may also contain material that is not confidential, in which case a party's interest in maintaining the confidential information would be adequately protected by redacting only portions of the document).